United States District Court
Southern District of Texas
**ENTERED**
July 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 2:22-CR-00128-1 |
| | § | |
| JOE DONAHUE | § | |

## MEMORANDUM OPINION AND ORDER

In the wake of the Supreme Court's recent decision in *New York Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ___, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022), federal courts across the Nation have seen a rise in challenges to the constitutionality of various "Felon in Possession" laws. This case is no different. On March 9, 2022, a federal grand jury returned a four-count indictment charging Defendant Joe Donahue with possession of a firearm after having previously been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9), as well as making false statements to a federal firearms licensee in violation of 18 U.S.C. § 922(a)(6). (Dkt. No. 1). Donahue subsequently filed a Motion to Dismiss Indictment asserting that Section 922(g)(9) is unconstitutional in light of *Bruen*.[1] (*See* Dkt. No. 24). Donahue requests that the Court declare Section 922(g)(9) unconstitutional and dismiss his indictment for failure to state

---

[1] Donahue does not challenge the constitutionality of Section 922(a)(6). Instead, he contends that if this Court were to find that Section 922(g)(9) was unconstitutional, the offense of making false statements to a federal firearms licensee—in this case answering "no" to the inquiry of whether Donahue had ever been convicted of the misdemeanor crime of domestic violence—would become immaterial. (Hearing Audio at 02:10:45–02:11:36).

an offense. (*Id.* at 1, 7). Having reviewed the Motion, the Response, the record, and the applicable law, the Court **DENIES** the Motion.

I.      BACKGROUND

In his Motion, Donahue argues that "his prosecution is now impermissible and that his indictment must be dismissed because of the recognition of rights embedded within the Second Amendment as recognized by *Bruen*." (Dkt. No. 24 at 1). He argues that the plain text of the Second Amendment allows misdemeanants, such as Donahue, to possess a firearm. (*Id.* at 4–5). Donahue also argues that the Government has not met its burden to show that the "Nation's history . . . supports firearm restrictions like [Section 922(g)(9)][,]" and the Government cannot meet this burden because "Section 922(g)(9) is a recent invention[.]" (*Id.* at 6). Donahue asserts that the Government must provide evidence from the time of the adoption of the Second Amendment to show that the Nation has a history of such firearm restrictions. (*Id.* at 5–7).

The Government responds that "[n]othing in the Supreme Court's decision in *Bruen* casts doubt on § 922(g)'s constitutionality." (Dkt. No. 26 at 1). The Government argues that the plain text of the Second Amendment does not cover Donahue's conduct. (*Id.* at 6–8). The Government reasons that "the people" set forth in the plain text of the Second Amendment does not include domestic violence misdemeanants, because "the people" is limited to the subset of the citizenry with political rights. (*Id.* at 8). The Government acknowledges that "although domestic violence existed at the time of our nation's founding, misdemeanor crimes of domestic violence . . . did not, limiting the practical availability of similar regulations." (*Id.* at 9) (cleaned up). However, the

2

Government argues that it need not show that Section 922(g)(9) existed in its modern form since the adoption of the Second Amendment, but rather that Section 922(g)(9) is analogous enough to historical regulations that are considered longstanding. (*Id.* at 11). The Government asserts that the Second Amendment was not understood to apply to individuals with prior criminal convictions, including ones involving domestic violence, because the Nation has a "longstanding tradition of disarming unvirtuous or dangerous citizens in general, and particularly those convicted of serious and/or violent crimes." (*Id.* at 9). As such, the Government maintains that Section 922(g)(9) is consistent with this Nation's historical tradition of firearm regulation. (*Id.* at 13–14).

## II.     DISCUSSION

The Second Amendment to the U.S. Constitution provides in part that: "[T]he right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, it is well-established that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 2816, 171 L.Ed.2d 637 (2008). The Supreme Court in *Bruen* set forth a two-step framework a court must apply in determining whether a firearm regulation violates the Second Amendment. First, a court must address the question of whether the Second Amendment's plain text covers the individual's conduct at issue. *Bruen*, 597 U.S. at ____, 142 S.Ct. at 2126–27. Second, if the court determines the conduct is covered, it must consider whether the Government has affirmatively demonstrated that the regulation at issue is consistent with this Nation's historical tradition of firearm regulation. *Id.*

Relevant here, Donahue is challenging the restriction in Section 922(g)(9), which makes it unlawful for any person

> who has been convicted in any court of a misdemeanor crime of domestic violence . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(9). Since *Bruen*, several federal courts across the Nation have grappled with the question of whether Section 922(g)(9) is now an unconstitutional restriction on an individual's right to bear a firearm.[2]

Joining every other court thus far, this Court finds that Section 922(g)(9) is not an unconstitutional restriction on an individual's right to bear a firearm in light of *Bruen*. *See, e.g.*, *Bernard,* 2022 WL 17416681, at *8 (collecting cases). In arriving at this conclusion, the Court finds that, while Donahue's conduct is covered by the text of the Second Amendment, Section 922(g)(9) is consistent with the Nation's traditional regulation of firearms.

### A.   DONAHUE'S CONDUCT AND THE PLAIN TEXT OF THE SECOND AMENDMENT

In *Bruen*, the United States Supreme Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively

---

[2]   *See United States v. Padgett*, No. 3:21-CR-00107, 2023 WL 2986935 (D. Alaska Apr. 18, 2023); *United States v. Porter*, No. 5:22-CR-00277, 2023 WL 2527878 (W.D. La. Mar. 14, 2023); *United States v. Bernard*, No. 1:22-CR-00003, 2022 WL 17416681 (N.D. Iowa Dec. 5, 2022); *United States v. Anderson*, No. 2:21-CR-00013, 2022 WL 10208253 (W.D. Va. Oct. 17, 2022); *United States v. Doty*, No. 5:21-CR-00021, 2022 WL 17492260 (N.D. W.Va. Sept. 9, 2022); *United States v. Nutter*, 624 F.Supp.3d 636 (S.D. W.Va. 2022); *United States v. Jackson*, 622 F.Supp.3d 1063 (W.D. Okl. Aug. 19, 2022).

protects that conduct[.]" 597 U.S. at ____, 142 S.Ct. at 2126. Thus, the first question a court must address is whether the relevant restriction—here, a statute—regulates conduct protected by the Second Amendment. More specifically here, the question is whether Section 922(g)(9)—which criminalizes the possession of a firearm by someone convicted of a misdemeanor crime of domestic violence—regulates conduct protected by the Second Amendment.

In *United States v. Rahimi*, the Fifth Circuit addressed the scope of the Second Amendment under step one of the *Bruen* framework. *United States v. Rahimi*, 61 F.4th 443, 451–53 (5th Cir. 2023), *cert. granted sub nom. United States v. Rahimi, Zackey*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023). The Fifth Circuit declined to "add a gloss on the Second Amendment" that would restrict its applicability to only "ordinary, law-abiding citizens[.]" *Id.* at 451 (quoting *Bruen*, 597 U.S. at ____, 142 S.Ct. at 2122). Similar to *Rahimi*, where the defendant "was not a convicted felon or otherwise subject to another longstanding prohibition on the possession of firearms[,]" Donahue, as a misdemeanant, does not fall into the enumerated groups, such as convicted felons and the mentally ill, who have sacrificed their status as a member of the political community and the rights enjoyed therein. *See id.* at 452 (explaining that a restraining order and merely being suspected of criminal conduct "d[id] not suffice to remove him from the political community within the amendment's scope[.]"). This Court too holds that Donahue's conduct—that is, the possession of a firearm by a misdemeanant—is conduct expressly protected by the Second Amendment.

### B.  SECTION 922(G)(9) AND THE NATION'S TRADITION OF FIREARM REGULATION

Having found Donahue's conduct to be presumptively covered by the Second Amendment, the Court now turns to whether the Government has justified Section 922(g)(9) "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at ____, 142 S.Ct. at 2130. This historical inquiry can take one of two forms: (1) a straightforward review of whether such regulations existed at the time of the Nation's founding, or (2) reasoning through analogy that a historical regulation is a proper analogue for a modern firearm regulation. *Id.* at ____, 142 S.Ct. at 2131.

#### 1.  **Straightforward Review of Historic Evidence**

The Parties do not dispute that the federal law prohibiting domestic violence misdemeanants from possessing firearms is of relatively recent origin. (Dkt. No. 24 at 6); (Dkt No. 26 at 9). The historical record from colonial times until 1994 is devoid of consistent examples of the government removing firearms from someone accused or convicted of domestic violence. *See United States v. Perez-Gallan*, ____ F.Supp.3d ____, No. 4:22-CR-00427, 2022 WL 16858516, at *5–6 (W.D. Tex. Nov. 10, 2022).

It is not surprising, then, that legal scholars have found little historical evidence of legislation regulating firearm possession in connection with domestic violence. *See, e.g.*, Joseph Blocher, *Domestic Violence and the Home-Centric Second Amendment*, 27 Duke J. Gender L. & Pol'y 45, 55–56 (2020) ("In the context of domestic violence prohibitions, the historical record is problematic to say the least."); Carolyn B. Ramsey, *Firearms in the Family*, 78 Ohio St. L.J. 1257, 1301 (2017) ("Historical support for the exclusion of domestic

6

violence offenders from Second Amendment protection appears rather thin."). Accordingly, this Court finds that no regulation similar to Section 922(g)(9) existed at the time of the Nation's founding.

### 2. Historical Inquiry Through Analogy

Turning to the historical inquiry through analogy, *Bruen* teaches that "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, 597 U.S. at \_\_\_\_, 142 S.Ct. at 2132 (quoting C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)).

Here, an analogy can be drawn between Section 922(g)(9) and founding-era legislation that disarmed people who were deemed dangerous. The prohibition of possession of firearms by domestic violence misdemeanants, and other groups identified as dangerous, is supported by history. *See, e.g.*, Lawrence Rosenthal, *The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control*, 92 Wash. U. L. Rev. 1187, 1239 (2015) ("[H]istory suggests that when the legislature restricts the possession of firearms by discrete classes of individuals reasonably regarded as posing an elevated risk for firearms violence, prophylactic regulations of this character should be sustained."); Carlton F.W. Larson, *Four Exceptions in Search of a Theory:* District of Columbia v. Heller *and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1377 (2009) (citing historical examples for the proposition that "any person viewed as potentially dangerous could be disarmed by the government without running afoul of the 'right to bear arms.'").

The historical record reflects significant regulation of firearms designed to ensure public safety and responsible gun ownership. In the founding era, firearms "could be required to be registered," gun owners could be required to undergo training, and the law could mandate storage requirements for "firearms and gun powder." *United States v. Nutter*, 624 F.Supp.3d 636, 641 (S.D. W.Va. 2022) (citing Adam Winkler, Heller's *Catch-22*, 56 UCLA L. Rev. 1551, 1562–63 (2009)). Finally, founding era laws prohibited bearing arms in a way that spread "fear" or "terror" among the people. *Bruen*, 597 U.S. at ___, 142 S.Ct. at 2145. "In sum, founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." *Nutter*, 624 F.Supp.3d at 643 (citing *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019), *abrogated by Bruen*, 597 U.S. ___, 142 S.Ct. 2111 (Barrett, J., dissenting)). When Section 922(g)(9) was enacted, Congress deemed those convicted of domestic violence as dangerous, and "that conclusion is well supported by empirical evidence and statistics regarding domestic violence, recidivism by those convicted of misdemeanor crimes of domestic violence, and increased risks of serious harm and death posed when firearms are present in connection with domestic violence." *Id.* (citing *United States v. Staten*, 666 F.3d 154, 161–67 (4th Cir. 2011)). Therefore, through analogy, Section 922(g)(9) is consistent with the Nation's historical tradition of firearm regulation.

Notably, though, the Fifth Circuit recently held that Section 922(g)(8), a similar felon-in-possession law, was unconstitutional because the Government failed to show that Section "922(g)(8)'s restriction of the Second Amendment right fits within our

Nation's historical tradition of firearm regulation." *Rahimi*, 61 F.4th at 460. Section 922(g)(8) makes it unlawful

> for any person . . . who is subject to a court order that[:] (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . .

18 U.S.C. § 922(g)(8). When performing the historical analysis in *Rahimi*, the Fifth Circuit rejected the analogy of dangerousness laws to Section 922(g)(8), holding that such laws were not "relevantly similar." *Rahimi*, 61 F.4th at 456–58. But Section 922(g)(9) is different.

First, Section 922(g)(8) disarms individuals after a civil proceeding, whereas Section 922(g)(9) does so after a *criminal* proceeding. The Fifth Circuit emphasized this distinction in *Rahimi* because "criminal proceedings have afforded the accused substantial protections throughout our Nation's history" and it is "significant that § 922(g)(8) works to eliminate the Second Amendment right of individuals subject merely to civil process." *Id.* at 455 n.7. Here, Section 922(g)(9) requires a conviction through a criminal proceeding, which guarantees substantial protections and provides more

9

certainty in the underlying proceeding, before disarming individuals. *See United States v. Porter*, No. 5:22-CR-00277, 2023 WL 2527878, at *3 (W.D. La. Mar. 14, 2023).

Second, Section 922(g)(8) disarms people based on "a finding of a credible threat,'" *Rahimi*, 61 F.4th at 455, whereas Section 922(g)(9) disarms by class or group—*i.e.*, those convicted of a misdemeanor crime of domestic violence. In this way, Section 922(g)(9) is similar to dangerousness laws which also operated to disarm covered people by class or group. *Id.* at 456–57.

Third, Section 922(g)(8) disarms an individual for "the protection of an identified person from the threat of 'domestic gun abuse,'" *id.* at 457 (internal quotation marks and citation omitted), whereas Section 922(g)(9) disarms a class or group of people to maintain political and social order. *Nutter*, 624 F.Supp.3d at 643–44; *see also Staten*, 666 F.3d at 161–67. Again, this design demonstrates how Section 922(g)(9) is "relevantly similar" to dangerousness laws which sought "the preservation of political and social order[.]" *Rahimi*, 61 F.4th at 457.

These distinctions confirm that dangerousness laws are a proper analogue for Section 922(g)(9). *See Porter*, 2023 WL 2527878, at *4. Therefore, the Court holds that the Government has satisfied its burden by demonstrating that Section 922(g)(9) is consistent with the Nation's historical tradition of firearm regulation.

## III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Indictment, (Dkt. No. 24).

It is SO ORDERED.

Signed on July 5, 2023.

                                                                                     */s/ Drew B. Tipton*
                                                                                     **DREW B. TIPTON**
                                                          **UNITED STATES DISTRICT JUDGE**